UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ANTHONY BURTON** | **CASE NO. 2:22-CV-01111** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **WEEKS MARINE, INC.** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. 15] filed by the Defendant, Weeks Marine, Inc. ("Weeks"), under Federal Rule of Civil Procedure 56. Plaintiff, Anthony Burton ("Burton"), opposes the motion. Doc. 19.

### I.
### BACKGROUND

This lawsuit arises from injuries suffered by Burton while employed as a rigger/pile driver working on a crane barge owned by Weeks. Burton filed suit against Weeks, alleging a claim of negligence under the Jones Act, 46 U.S.C. § 30104, and general maritime law. Doc. 1. Therein, Burton seeks recoupment of maintenance and cure as well as punitive damages on the grounds that Weeks has willfully and wantonly failed to pay sufficient maintenance and cure despite notice of the severity of his injuries and his continued treatment.[1] *Id.* at ¶ 13. Burton also seeks damages for physical pain, mental

---

[1] Plaintiff also sought punitive damages on the grounds that Weeks's conduct was "grossly negligent and reckless" and "because of the vessel's unseaworthiness following the United States Supreme Court's ruling in *Atlantic Sounding*." Doc. 1 at ¶ 14. This Court previously dismissed all claims for punitive damages arising from negligence and unseaworthiness. Doc. 8.

anguish, disfigurement, loss of enjoyment of life, loss of earnings (past and future), and future medical expenses. *Id.* at ¶ 12.

Burton began his employment with Weeks as a rigger/pile driver on February 11, 2019. Doc. 15-3 at ¶ 1. From February 2019 through July 20, 2019, Burton worked at a Weeks facility in Portland, Texas, reclaiming land in a marshy area. *Id.* at ¶ 2. While there, Burton lived and worked onshore. *Id.* Burton was then transferred to a Weeks marine facility in Bourg, Louisiana, where he worked preparing barges to ship to other jobsites. Doc. 15-6, Burton Dep. at 77-78, 80-81. During that time Burton lived onshore at a local hotel. *Id.* at 79.

On September 16, 2019, Burton arrived to work in Cameron Parish, Louisiana, at the Weeks Venture Global job site, which was accessible by vehicle. Doc. 15-3 at ¶¶ 6-7. The scope of the work for the Venture Global project was to build a storm surge wall around a LNG facility. *Id.* at ¶ 7. There were six or eight crews, with four to six people in each crew, all working on various parts of the surge wall project on land, spread out over a 400-acre area. *Id.* at ¶ 9. Burton's initial role at the Venture Global job site was taking equipment off trucks and driving piles into the marsh. *Id.* at ¶ 12.

On November 21, 2019, two months after Burton arrived at the site, the *WEEKS 571* crane barge arrived. *Id.* at ¶ 11. Burton did not travel or arrive with the barge, as the barge was unmanned during transportation. *Id.* at ¶ 13. The barge did not have its own self-propulsion. *Id.* at ¶ 14. The barge was moved from job to job by tugs with their own crews. *Id.* at ¶ 15. None of the construction crew slept on the barge, as the barge had no accommodations. *Id.* at ¶ 18. The crane barge was "spudded in" adjacent to the marine

offload facility. *Id.* at ¶ 20. When spudded in place, the barge was less than 50 feet away from the dock, as the gangways were only a maximum of 50 feet long. Doc. 15-8, Wurster Dep. at 63. Burton would sometimes accompany the *WEEKS 571* as it was repositioned along the edge of the land at the marine offload facility, moving at most two to three hundred feet and never leaving the facility. Doc. 15-3. at ¶ 29.

Burton's assigned crew was using the crane as a stationary work platform at the Venture Global job site. *Id.* at ¶ 21. Burton worked on the *WEEKS 571* while it was moored to the shore, connected by a gangplank, at dock level. *Id.* at ¶ 22. As a rigger, Burton engaged in the work of transferring equipment from barges on the water onto the land. *Id.* at ¶ 23. While working on the stationary, spudded barge, moored at the marine offload facility, Burton's crew loaded and unloaded materials from other barges that arrived at the offload facility, and would transfer the materials onto trucks on land at the site. *Id.* at ¶ 24. The *WEEKS 571* was used to unload two types of materials from other material barges: pipe piles and sheet piles. *Id.* at ¶ 25. The crane on the *WEEKS 571* had a maximum radius of 170 feet and was moored directly adjacent to the marine offload facility so that trucks could approach close enough for the crane to reach. *Id.* at ¶ 28.

Burton was injured on April 26, 2020, while working to extend the boom of the crane to add an additional section. Doc. 15-8, Wurster Dep. at 25, 43. As part of this process, Burton and another crew member utilized a pry bar to move a spool, which was receiving wire cabling off the crane, that had become stuck in its frame. *Id.* at 33. Burton was injured when the tension on the pry bar gave way, and his fingers were caught between the spool and the pry bar. Doc. 15-6, Burton Dep. at 135.

Weeks moves for summary judgment dismissal of Burton's claims under Federal Rule of Civil Procedure 56, arguing that Burton is a longshoreman, not a seaman under the Jones Act, and therefore, cannot avail himself of the available remedies and protections afforded by the Jones Act. Doc. 15-1. Burton opposes the motion, arguing that he qualifies as a seaman. Doc. 19-1.

## II.
## LAW AND ANALYSIS

### A. Summary Judgment Standard

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end, he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

In a Jones Act case the question of seaman status is generally left to the jury when the underlying material facts regarding plaintiff's seaman status are disputed. *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 280 (5th Cir. 1981). If reasonable persons could draw conflicting inferences summary judgment must be denied. *Starks v. Advantage Staffing, LLC*, 202 F.Supp.3d 607, 611 (E.D. La. 2016) (citing *Buras v. Commercial Testing & Eng'g Co.*, 736 F.2d 307, 309 (5th Cir. 1984)). However, summary judgment is appropriate when the underlying material facts establish beyond question, as a matter of law, the lack of seaman status. *Hemba v. Freeport McMoran Energy Partners, Ltd.*, 811 F.2d 276, 277 (5th Cir. 1987) (quotations omitted).

### B. Jones Act Seaman Status

The Jones Act provides remedies in tort law for a seaman who is injured in the course of his employment. Land-based maritime employees, on the other hand, are limited to worker's compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq. *In re Two-J Ranch, Inc.*, 534 F.Supp.2d 671, 677 (W.D. La. 2008). The Jones Act and the LHWCA are mutually exclusive compensation

regimes. *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 553 (1997). The term "seaman" is not defined by the Jones Act. However, the courts have developed a test for seaman status, which this Court must apply.

To qualify as a seaman under the Jones Act a plaintiff must satisfy two requirements: (1) his duties must contribute to the function of the vessel or the accomplishment of its mission, and (2) he must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial both in duration and nature. *Chandris, Inc. v Latsis*, 515 U.S. 347, 368 (1995).

"To satisfy the first prong of the *Chandris* test, the claimant need only show that he 'do[es] the ship's work.'" *In re Endeavour Marine, Inc.*, 234 F.3d 287, 290 (5th Cir. 2000). This requirement is very broad. *Id.* The purpose of the second prong is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore, whose employment does not regularly expose them to the perils of the sea." *Id.* The second "substantial connection" requirement involves consideration of both the duration and nature of an individual's employment, which is a much more involved inquiry. *Id.* As the Supreme Court has stated:

> the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relationship to the navigation of vessels and the perils attendant thereon. The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Chandris*, 515 U.S. at 370 (citation omitted). To establish a sufficient temporal connection to meet the duration requirement, a plaintiff must show that he spends at least 30 percent of his time in service of a vessel or an identifiable group of vessels. *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 374-75 (5th Cir. 2001).

The U.S. Fifth Circuit Court of Appeals recently provided three additional factors that this Court must consider in determining whether the "substantial connection" requirement has been met to qualify as a seaman and derive benefits under the Jones Act. *Sanchez v. Smart Fabricators of Texas, Inc.*, 997 F.3d 564 (5th Cir. 2021).[2] In *Sanchez*, the Fifth Circuit noted that both seaman and non-seaman maritime workers may face similar risks and "perils of the sea." *Id.* at 574. As such, three additional factors were provided as follows:

> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?
>
> (2) Is the work sea-based or does it involve seagoing activity? and
>
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or
> (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?

*Id.*

---

[2] The *Sanchez* case was heard en banc by the Fifth Circuit to provide a more definitive test, consistent with Supreme Court caselaw, to determine whether an individual is entitled to seaman status. *Sanchez*, 997 F.3d at 566. Therein, the Fifth Circuit overruled its prior opinion in *Naquin v. Elevating Boats, LLC*, 744 F. 3d 927 (5th Cir. 2014) because *Naquin* analyzed seaman status based solely on the "perils of sea" test while the plaintiff ordinarily worked on liftboats that were moored, jacked up, or docked. *Id.* at 573. The *Sanchez* decision makes clear that while "perils of the sea" is a consideration, it should not be the sole or primary test. *Id.*

As a preliminary matter, the Defendant first argues that the Jones Act is not implicated in this case because the *WEEKS 571* is not a "vessel," noting that it was primarily used as a work platform. Doc. 15-1 at 10-11. Plaintiff counters that the jurisprudence has recognized many types of barges, including crane barges, as vessels. Doc. 19-1 at 11. Plaintiff also argues that, at a minimum, it is a jury question whether the *WEEKS 571* qualifies as a vessel. Doc. 19-1 at 12.

The Jones Act does not define the term "vessel," and the Fifth Circuit "has repeatedly held that the term is incapable of a precise definition." *Matter of Ingram Barge Co., LLC*, 2023 WL 6123107, at *2 (5th Cir. Sept. 19, 2023) (quoting *Ducote v. V. Keeler & Co.*, 953 F.2d 1000, 1002 (5th Cir. 1992)). However, the Supreme Court has explained that "a 'vessel' is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 497 (2005). This broad definition does not mean that every structure that floats will qualify as a vessel. *Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 121 (2013). A reasonable observer looking at the physical characteristics and activities of the structure must determine that it was designed to a practical degree for carrying people or things over water. *Id.* A watercraft that has been permanently moored or otherwise rendered practically incapable of transportation or movement is not a vessel. *Stewart*, 543 U.S. at 494. In this instance, the *WEEKS 571* is clearly designed to carry a crane over water, and it was not permanently moored. This is evidenced by the arrival of the *WEEKS 571* at the Venture Global job site over water and its frequent repositioning along the shore.

Doc. 15-3 at ¶¶ 15, 29. Accordingly, the Court finds that the *WEEKS 571* meets the parameters of a vessel under *Stewart* and *Lozman*.

The Court must now consider the first prong of the *Chandris* test: whether the Plaintiff's duties contributed to the function of the vessel or the accomplishment of its mission. As noted above, the Plaintiff need only show that he "does the ship's work." *In re Endeavour Marine*, 234 F.3d at 290. The Defendant argues that the function of the *WEEKS 571* was to transport the crane from one jobsite to another and facilitate the crane's work. Doc. 15-1 at 13. Further, Defendant argues that the Plaintiff was part of a land-based crew, only encountering the *WEEKS 571* as a work platform, and therefore did not contribute to the mission or function of the *WEEKS 571*. *Id.* at 15. The Plaintiff counters that the mission of the *WEEKS 571* was to utilize the onboard crane to load and unload materials, which cannot be accomplished without the aid of a rigger. Doc. 19-1 at 12. As such, Plaintiff argues that he was unquestionably doing the work of the *WEEKS 571*. *Id.* Moreover, Plaintiff highlights that he was injured on board the *WEEKS 571* while servicing the crane to increase its range. *Id.* On the first *Chandris* prong, the Court agrees with the Plaintiff. The function of the *WEEKS 571* was to provide a crane to assist with unloading materials for the Venture Global job site, which could not be accomplished without the aid of the rigging crew.

Turning to the second prong of the *Chandris* test, the Court must determine if the Plaintiff has a "substantial connection" to the *WEEKS 571* in both duration and nature utilizing the factors set forth in *Sanchez*. As for duration, Defendant argues that there is insufficient evidence to establish that Plaintiff spent at least 30% of his time on board a

vessel in navigation. Doc. 15-1 at 19. Defendant arrives at this conclusion by arguing that none of Plaintiff's time aboard the *WEEKS 571* counts as "sea time" because the barge was moored, stationary, spudded in, and connected to land when the crane was in operation. *Id.* at 19-20. Plaintiff counters that Defendant's own corporate representative testified that riggers spent most of their time working in service of the barges, with the work being performed on the barges themselves over water. Doc. 19-1 at 13. Plaintiff also notes that the time sheets covering the relevant employment period offered by the Defendant demonstrate that 66.25% of his employment was spent servicing the barge, which is sufficient to meet the duration element. *Id.* at 14. The Court notes that the timesheets provide minimal descriptions of exactly how work was performed on any given day. Docs. 15-9, 15-10. Drawing all inferences in favor of the Plaintiff, the Court finds that Plaintiff has provided sufficient evidence to at least create a fact question as to whether he spent more than 30% of his time working in service to the *WEEKS 571*.

  The Court must continue its seaman analysis utilizing the *Sanchez* factors to determine whether Plaintiff's connection to the *WEEKS 571* was substantial based on the nature of his employment. The first *Sanchez* factor asks: "Does the worker owe his allegiance to the vessel, rather than simply the employer?" *Sanchez*, 997 F.3d at 574. Seaman, as opposed to land-based workers, "owe their allegiance to a vessel and not solely to a land-based employer." *Chandris*, 515 U.S. at 359. Defendant argues that Plaintiff's allegiance rested with his employer performing land-based work, noting that Plaintiff began working at the Venture Global job site performing land-based construction months before the *WEEKS 571* arrived. Doc. 15-1 at 15. Moreover, Defendant notes that Plaintiff

was a rigger/pile driver and Plaintiff has pointed to no evidence to suggest that he was ever designated as a deckhand for the *WEEKS 571*. Finally, the Defendant notes that even when Plaintiff performed work involving the *WEEKS 571,* he did so while it was operating as a stationary platform moored to the land. *Id.*

The facts of this case limit the usefulness of the first *Sanchez* factor in determining seaman status. Plaintiff was employed by Weeks Marine, Inc., and worked as a rigger servicing the *WEEKS 571*, which is also appears to be owned by Weeks Marine, Inc. Doc. 15-8, Wurster Dep. at 6, 12-13; Doc. 15-11. Thus, the vessel owner and the employer are essentially one in the same. However, the Court finds that Plaintiff owed his allegiance to Weeks Marine, Inc., as his shore-side employer, based on his employment history demonstrating that Plaintiff moved from job site to job site upon the direction of his employer rather than being assigned to a vessel.

The second *Sanchez* factor asks: Is the work sea-based or does it involve seagoing activity? *Sanchez*, 997 F.3d at 574. Defendant argues that Plaintiff fails to meet this factor because all of the Plaintiff's work on the *WEEKS 571* was performed while it was spudded in, level with the dock, and connected to the shore by a gangplank. Doc. 15-1 at 16. Indeed, Defendant maintains that 0% of Plaintiff's working days were performed while the *WEEKS 571* was in navigation. *Id.* The Plaintiff did not address this *Sanchez* factor, but instead argued that his work as a rigger consistently placed him over water aboard barges owned by the Defendant, thereby exposing him to the perils of the sea. Doc. 19-2 at 14-15.

A review of the evidence indicates that the second *Sanchez* factor also weighs against a finding of seaman status. When Plaintiff worked on board the *WEEKS 571* it was

spudded in place and connected to the dock with a gangway. The only times Plaintiff was aboard the *WEEKS 571* when it was not spudded or connected by a gangplank was when the *WEEKS 571* was repositioned along the land at the marine offload facility. Doc. 15-3 at ¶ 29. However, the *WEEKS 571* never left the facility, and was only moved two to three hundred feet. *Id.* Time spent working aboard a vessel that is stationary and docked is not of a "seagoing nature" that would subject an employee to the perils of the sea. *Harbor Tug and Barge Co. v. Papai*, 520 U.S. at 559. Indeed, in the *Sanchez* case the Fifth Circuit determined that the plaintiff, who was working on a vessel at the dock making repairs, was not engaged in "seagoing activity" or work of a "seagoing nature." *Sanchez*, 997 F.3d at 575. Based on the evidence presented, the Court finds that the Plaintiff was not engaged in "sea-going" activity because the *WEEKS 571* was primarily stationary and spudded into place, with only minor movements along the bulkhead to reposition the crane.

The third *Sanchez* factor asks: "(a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location? *Sanchez*, 997 F.3d at 574. Defendant argues that this factor also indicates that Plaintiff is not a seaman. Specifically, Defendant notes that the Plaintiff arrived at the job site two months before the *WEEKS 571*, during which time the Plaintiff engaged in land-based construction activities. Doc. 15-1 at 18. Once the *WEEKS 571* arrived, he performed rigging activities while the *WEEKS 571* was spudded in place. *Id.* Further, Defendant contends that Plaintiff was not connected to the *WEEKS 571*, but to the

Global Venture job site. *Id.* Plaintiff did not specifically address this factor, focusing instead on his exposure to the perils of the sea.

A review of the evidence suggests that the third *Sanchez* factor also weighs against a finding of seaman status. While the record indicates that Plaintiff was not merely performing a discrete task, such as painting or welding, there is no evidence to suggest that Plaintiff's work assignment would include sailing with the *WEEKS 571* to another location. Rather, the evidence indicates that Plaintiff's work assignment was tied to a particular land-based location. He began working for the Defendant in Portland, Texas, where he worked and lived on shore. Doc. 15-3 at ¶ 2. He was then transferred to Bourg, Louisiana, where he worked preparing, organizing, and outfitting two barges to ship to other jobsites. Doc. 15-6, Burton Dep. at 77-78, 80-81. Thereafter, Plaintiff was told to report to the Venture Global job site in Cameron Parish, Louisiana. *Id.* at 88. Plaintiff did not travel with the *WEEKS 571* to the Venture Global job site, and there is no indication or evidence that Plaintiff would have traveled with the *WEEKS 571* when that job was complete. As such, the Court finds that the third *Sanchez* factor also weighs against a finding of seaman status.

Based on a review of the summary judgment evidence, viewed in a light most favorable to Burton, the Court finds that the *Sanchez* factors weigh against Burton's ability to satisfy *Chandris's* "substantial connection" requirement to establish seaman status. Therefore, the Court must find that Burton does not qualify as a Jones Act seaman. All of Burton's claims asserted under the Jones Act must be dismissed. His exclusive remedy against Weeks is found under the LHWCA as a land-based maritime worker.

# III.
# CONCLUSION

For the reasons assigned above, Defendant's Motion for Summary Judgment [Doc. 15] is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Defendant's Motion for Oral Argument [Doc. 18] is **DENIED AS MOOT**.

**THUS DONE AND SIGNED** in Chambers this 12th day of December, 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**